UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHAD JAMES BRADSHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil No. 2:15-CV-0006 |
| v. ) | Judge Sharp |
| ) | |
| JEFFREY E. GUTH, in his official ) | |
| Capacity as Police Chief of the City of ) | |
| Sparta Police Department, BRENT ) | |
| COPELAND, individually and in his ) | |
| official capacity as an officer of the ) | |
| City of Sparta Police Department, and ) | |
| CHRIS BENNETT, individually and in ) | |
| his official capacity as an officer of the ) | |
| City of Sparta Police Department, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff Chad James Bradshaw brings claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the U.S. Constitution. Defendants Jeffrey E. Guth, Brent Copeland, and Chris Bennett have filed Motions for Summary Judgment (Docket Nos. 27, 30) as to all of Plaintiff's claims. For the reasons that follow, Defendants' Motions will be granted.

# BACKGROUND

This case arose after Plaintiff's 2011 arrest. The following facts are undisputed.[1]

Plaintiff lives in Sparta, Tennessee with his wife, Anne Marie Bradshaw. On November 8, 2011, Anne Marie Bradshaw's stepmother called the Sparta Police Department and reported that Plaintiff had thrown rocks at her. (See Docket No. 33, ex. 1, p. 1.) The dispatcher sent Officers Brent Copeland and Chris Bennett to Plaintiff's home. (Docket No. 1, p. 5.)

Copeland and Bennett soon arrived and began speaking to Plaintiff through a locked screen door. They asked that Plaintiff either let them inside or come outside and speak with them. After Plaintiff refused both requests, Copeland reached through a hole in the screen and unlocked the door. Both officers then entered the home. (Docket No. 1, p. 6.)

Once Copeland and Bennett were inside Plaintiff's home, things became violent. Bennett, Copeland, and Guth all claim that Plaintiff was "fighting with [the] officers as they were attempting to take him into custody." (Docket No. 28, p. 1; Docket No. 32, p. 1.) In the criminal complaint, Copeland later wrote that Bradshaw had "punched [Copeland] in the left side of [his] face" and "began kicking" Copeland and Bennett. (Docket No. 33, ex. 1, p. 1.) The officers eventually forced Plaintiff to the ground, sprayed his eyes with chemical spray, and handcuffed him. (Docket No. 33, ex. 1, p. 1.)

Plaintiff was arrested for domestic assault, Tenn. Code Ann. § 39-13-111, and resisting arrest, Tenn. Code Ann. § 39-16-602.[2] (Docket No. 27, ex. 1, pp. 1–2.) On March 25, 2015, he pleaded guilty to both counts and was sentenced to 18 months in county jail. (Docket No. 27, ex. 1, pp. 1–2; ex. 2, pp. 1, 6–7.)

---

[1] Plaintiff did not respond to Defendants' Motions. Under Local Rule 56.01(g), Plaintiff's failure to respond indicates that he does not dispute Defendants' assertions of fact. M.D. TENN. R. 56.01(g).

[2] The original criminal complaint against Plaintiff lists five offenses: domestic assault, vandalism (causing less than $500 in damage), simple assault, resisting arrest, and criminal exposure to HIV. (See Docket No. 33, ex. 1, pp. 1–2.) Only two offenses—domestic assault and resisting arrest—are mentioned in the parties' briefs.

Plaintiff filed this suit in January 2015. In his Complaint, he brought two claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments: (1) excessive force (Count I); and (2) failure to properly train (Count II). (See Docket No. 1, pp. 7–11.) Plaintiff brings Count I against Copeland and Bennett, but not Guth. (See Docket No. 1, pp. 2–9.) He brings Count II against Guth alone. (See Docket No. 1, pp. 9–11.)

## LEGAL STANDARD

Summary judgment "is appropriate only where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Whitfield v. Tenn., 639 F.3d 253, 258 (6th Cir. 2011) (quoting FED. R. CIV. P. 56(c)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A court's function at the summary-judgment stage is not "to weigh the evidence and determine the truth of the matter," but rather to "determine whether there is a genuine issue for trial." Id. at 249.

A court must draw "all reasonable inferences in favor of the nonmoving party." Shreve v. Franklin Cty., Ohio, 743 F.3d 126, 132 (6th Cir. 2014). See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the non-moving party may not merely rest on allegations contained the complaint; instead, he must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. See Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002).

## ANALYSIS

Defendants make two arguments in support of their Motions. First, all three Defendants argue that Plaintiff's claims are barred by the U.S. Supreme Court's holding in Heck v.

Humphrey, 512 U.S. 477 (1994). (Docket No. 29, pp. 2–9.) Second, Guth argues that Plaintiff has not shown supervisory liability for his failure-to-train claim. (Docket No. 29, pp. 9–11.)

**I. Plaintiff's Excessive-Force Claim is Barred by <u>Heck v. Humphrey</u>.**

In <u>Heck</u>, the Supreme Court held that a plaintiff cannot assert a § 1983 claim if success on that claim would "necessarily imply the invalidity" of an underlying state criminal conviction. 512 U.S. at 486–87. Defendants argue that <u>Heck</u> bars Plaintiff's excessive-force claim. They contend that the claim, if successful, would imply that Plaintiff's resisting-arrest conviction was improper under state law. (Docket No. 31, p. 7.)

The Court agrees. The Sixth Circuit has held that <u>Heck</u> applies in two circumstances: (1) when the criminal provision makes the absence of the specific constitutional violation an element of the crime; and (2) when the specific constitutional violation is an affirmative defense to the crime. <u>See, e.g.</u>, <u>Hayward v. Cleveland Clinic Found.</u>, 759 F.3d 601, 609 (6th Cir. 2014); <u>Schreiber v. Moe</u>, 596 F.3d 323, 334 (6th Cir. 2010); <u>Cummings v. City of Akron</u>, 418 F.3d 676, 684 (6th Cir. 2005). In each of these circumstances, a § 1983 suit would "seek[] a determination of a fact that, if true, would have precluded the conviction." <u>Schreiber v. Moe</u>, 596 F.3d at 334. The Sixth Circuit has also held that <u>Heck</u> applies only when the § 1983 claim and the conviction arise out of the same events. <u>Cummings v. City of Akron</u>, 418 F.3d 676, 682–83 (6th Cir. 2005).

So, for Plaintiff's excessive-force claim, the Court must ask two questions. First, did the claim contradict an element of either of his two underlying criminal convictions? And second, could the claim have been asserted in court as an affirmative defense to the charges? If the answer to either question is "yes"—and Plaintiff's claim and conviction arose out of the same events—then the claim must be dismissed.

4

Fortunately, state law offers a straightforward answer. Section 39-16-602 of the Tennessee Code defines "resisting arrest" as "intentionally prevent[ing] . . . a [known] law enforcement officer, . . . from effecting a[n] . . . arrest or search . . . by using force against the law enforcement officer." Tenn. Code Ann. § 39-16-602(a). Nowhere does the statute require a "lawful arrest" as an element of the crime. Id. But the statute does provide that, "as [set out] in [Tenn. Code. Ann.] § 39-11-611," a defendant may argue that the "arrest or search was unlawful." Tenn. Code Ann. § 39-16-602(b). Tiger v. Pynkala, 2014 WL 5502405, at *8 (W.D. Tenn. Oct. 30, 2014). And § 39-11-611 provides that "use of force against another is not justified . . . [t]o resist a[n] . . . arrest" unless "[t]he law enforcement officer attempts to use greater force than necessary to make the arrest." Tenn. Code Ann. § 39-11-611(e)(3)(A). The upshot is clear. The state does not have to prove the absence of excessive force for a resisting-arrest conviction. But a criminal defendant may raise an affirmative defense to a resisting-arrest charge by arguing that the arresting officer used excessive force.

Given the resisting-arrest statute's language, Plaintiff's excessive-force claim should be dismissed. See Hayward v. Cleveland Clinic, 759 F.3d 601, 609 (6th Cir. 2014). Plaintiff entered a guilty plea on his resisting-arrest charge; in opting to plead guilty instead of going to trial, Plaintiff gave up his chance to raise an excessive-force defense. The conviction that resulted from his guilty plea therefore "necessarily include[d] a finding that [Copeland and Bennett] did not use excessive force." Roberts v. Anderson, 213 Fed. App'x 420, 427 (6th Cir. 2007) (citing State v. Davis, 2004 WL 2583893, at *10 (Tenn. Crim. App. Nov. 15, 2004)); Tiger v. Pynkala, 2014 WL 5502405, at *8 (W.D. Tenn. Oct. 30, 2014).

Plaintiff's conviction and the excessive-force claim also arose from the same event: his fight with Copeland and Bennett as the officers tried to handcuff him. Matheney v. City of

5

Cookeville, Tenn., 461 Fed. App'x 427, 431 (6th Cir. 2012). Copeland's complaint states that he "entered the residence" and "tr[ied] to detain [Plaintiff]." (Docket No. 33, ex. 1, p. 1.) Bennett "took [Plaintiff] to the ground," but Plaintiff continued "kicking the officers" and "didn't place his hands behind his back." (Docket No. 33, ex. 1, p. 1.) Only after Copeland used chemical spray were the officers "finally able to place [Plaintiff] in handcuffs" and bring him to their patrol car. (Docket No. 33, ex. 1, p. 1.) Even viewing the facts in the light most favorable to Plaintiff, the force used by the officers was a direct response to Plaintiff's resistance.[3]

Plaintiff could have raised an excessive-force defense to the original resisting-arrest charge. But he instead pleaded guilty, waiving that defense and creating an implication that his resisting-arrest conviction was not accompanied by excessive force. Roberts v. Anderson, 213 Fed. App'x 420, 427 (6th Cir. 2007). In light of this, and because the alleged excessive force occurred during the same fight that led to the resisting-arrest charge, Plaintiff's excessive-force claim is barred by Heck. See, e.g., Matheney v. City of Cookeville, Tenn., 461 Fed. App'x 427, 431 (6th Cir. 2012). Defendants are entitled to summary judgment on this claim.

**II. Plaintiff's Failure-to-Train Claim Also Fails.**

Defendants also argue that they are entitled to summary judgment on Plaintiff's failure-to-train claim. That claim alleges that "[t]he City of Sparta and . . . Guth" are responsible for violating Plaintiff's Fourth-Amendment rights by "fail[ing] to adequately and properly train" the officers and "creating an atmosphere of illegal and unconstitutional behavior." (Docket No. 10.)

As a preliminary matter, Plaintiff seems to conflate a § 1983 claim of individual supervisory liability with a claim of municipal liability. But even if this was Plaintiff's intention,

---

[3] The Sixth Circuit has held that, in excessive-force claims, Heck applies when an officer's use of force occurs as a direct response to an arrestee's resistance. See Coble v. City of White House, 2009 WL 2850764, at *8–9 (M.D. Tenn. Aug. 29, 2009), rev'd on other grounds, 634 F.3d 865 (6th Cir. 2011). Copeland and Bennett used force only after Plaintiff kicked and punched the officers. (See Docket No. 33, ex. 1, pp. 1–2.)

6

his municipal liability claim fails. A local government is liable under § 1983 only when the government itself commits the constitutional violation. Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993). To succeed on a municipal liability claim, Plaintiff must show that some illegal policy or custom of the City of Sparta was the "moving force" behind the constitutional violation. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978); Anderson v. Waterford Tp., 562 Fed. App'x 484, 491 (6th Cir. 2014).

Plaintiff has not made this showing. He has not identified any municipal policy that covers training programs for Sparta Police Department officers, nor has he pointed to the absence of such training programs. He offers no evidence that the City has a history of allowing officers to use excessive force while making arrests. And he fails to explain how the City's policy failures led to a violation of his constitutional rights. Instead, he offers only vague, unsupported assertions of the City's liability. This is not enough to survive summary judgment. Rodriguez v. Stryker Corp., 680 F.3d 568, 573 (6th Cir. 2012) ("Unsupported speculation does not suffice to survive summary judgment."). To the extent that Plaintiff has alleged a claim for municipal liability, Defendants are entitled to summary judgment on the claim.

Plaintiff's supervisory-liability claim fails for similar reasons. Guth is only liable if he played an active role in the alleged constitutional violation. Greene v. Barber, 310 F.3d 889, 899; Everson v. Leis, 556 F.3d 484, 495 (6th Cir. 2009); (6th Cir. 2002) (holding that supervisory liability under § 1983 must be "based on active unconstitutional behavior," not a failure to act). In order to prevail, Plaintiff would need to show that Guth "either encouraged the specific incident of misconduct or in some other way directly participated in it." Shehee v. Lutrell, 199 F.3d 295, 300 (6th Cir. 1999). See also Hays v. Jefferson Cty., 668 F.2d 869, 874 (6th Cir. 1982).

Plaintiff has not pointed to any specific actions suggesting that Guth "encouraged the specific incident" of alleged excessive force or "participated in it" in any way. Shehee, 199 F.2d at 300. Plaintiff simply argues that, because Guth was in a position of authority over Copeland and Bennett, Guth should be held liable for the officers' misconduct. But this argument fails. Without any specific facts about the deficiencies in the Sparta Police Department's training program—and some evidence that Guth was responsible for those deficiencies—Plaintiff essentially would have the Court hold Guth liable on the basis of *respondeat superior*. The Sixth Circuit has long held that supervisory liability requires more. See, e.g., Essex v. Cty. of Livingston, 518 F. App'x 351, 355 (6th Cir. 2013); Bennett v. City of Eastpointe, 410 F.3d 810, 818 (6th Cir. 2005) ("For a claimant to succeed on a claim of supervisory liability under § 1983, the claimant must show more than simply a supervisor's right to control employees, and cannot succeed solely on the theory of *respondeat superior*."). Accordingly, Defendants are also entitled to summary judgment for Plaintiff's supervisory-liability claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motions for Summary Judgment (Docket Nos. 27, 30). An appropriate Order will be entered.

*[signature: Kevin H. Sharp]*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE